Your Honor, good morning. My name is Stephen Stanwyck. I am, since 1990, counsel for North American Timeshare, the law-of-the-case successor to the original United Computer Systems entity. This is replete in the 1993 decision of this Court where AT&T ironically attacked the standing of N.A.T. as the successor in interest to U.C.S. Using my time, I hope wisely, I'm going to first go over the bankruptcy and the jurisdictional argument. I do want to tell the Court that one case that we have cited, Luong, regarding jurisdiction, has been withdrawn by this Court as moot. So it is no longer effective. It was not withdrawn on the law, but on a question of mootness between the parties. We have cited that for diversity of jurisdiction and arbitration demand. Your Honor, this duel to get to arbitration, I think, has finally been resolved by this Court's decision in LifeScan v. Premier Diabetics on April 13, 2004. I think if the appellants, and I use that in the plural because the succeeding Court found that Stephen Stanwyck was the real party in interest, had wanted to write a decision, and I don't know if the Court got our letter last week citing this case. Yes, we did. Thank you. I think if the appellants had wanted to write a case, if it needed to write a case, this case resolved all the legal issues that are now before this Court regarding the arbitration. I think the arbitration is what is important here. Obviously, I am vexed by the vexatious litigant order. I think it was improper. I think it was improper even based on the 2002 decision in that it incorporated the party's arbitration conduct as a basis for the vexatious litigant order. I think that the hostility of the courts to the merits of an appellant's claim in kind of keeping them from just the ability to arbitrate. Counsel, what language are you relying upon in LifeScan to support your argument that LifeScan is dispositive of the issues in this case?  In LifeScan, the Court says, By its terms, Section 4 of the FAA limits the Court's discretion. The Court must order the parties to proceed to arbitration only in accordance with the terms of the agreement. Citing Dean Witter. And so what application does that language have to the issues that we currently confront? The Court goes on, Your Honor, to say faithful to the statute. It goes on to the issue here, there and here, of arbitration fees, whether filing fees or the fees to go on with arbitration. The Court held that this is within the discretion of the arbitrators. There is, of course, no totally satisfactory solution in such circumstances, which is doubtless why the AAA gives arbitrators the flexibility to make the best of a bad situation. Counsel, in that case, wasn't the dispositive fact that one of the parties could not afford to pay the fees? Your Honor, whether ñ that wasn't the dispositive fact. The dispositive law here was that it was up to the panel to finally make the decision. There wasn't anything in here as to whether that was true or not. In this case, then, the Court ordered that you proceed to arbitration. And you're taking issue with ñ you filed a different arbitration. Is that ñ am I misunderstanding the facts in this case? Yes, as we see them, Your Honor. We did file a petition to compel arbitration. We did not file a filing with the AAA for two reasons. One, we've ñ We were in arbitration number four. Well, that's what was ñ yes, that was the ñ So the Court, as I understand the facts, the Court ordered you to go ahead, pay the fees and proceed with arbitration number four. Yes, Your Honor, which we did. You did? You did? Your Honor, in fact, yes, we did. We did with reservation of rights. This whole idea that we started another arbitration is nowhere in the record. It's a complete construct. There is a AAA form. We sent in the form. There's no dispute that we sent in the fees. It's your position that you did not commence arbitration five? That was not our intention, Your Honor, at all. In fact, what our intent was, we have been cast with so many stones for supposedly filing an arbitration demand. As Judge Liu unfortunately said, literally was the same as the previous demand. And it wasn't literally. Literally is exactly. Did you file a new demand? No, Your Honor. What we did is ñ Any demand? With the check for the fees, which is not disputed, we sent what was an amended demand. And on it, it refers and says an amended demand. Why would you need an amended demand if there was already a demand for arbitration? Because we had been already ñ Ironicus is trying to do a good deed. We had already been hammered for supposedly filing a demand that was exactly the same as the previous demand. So what I as counsel did was try to expand what our demand is. It's not the same as a pleading in federal court. There was no intent to start a new arbitration. Why would there be? You can ñ until under the AAA rules, and all we agreed, and I don't have any dispute, we agreed the AAA rules, not the AAA. Until the neutral arbitrator is selected, a party can amend its demand without leave of anyone. We would not have done that if there had been a neutral selected. No intent to start. It's not called 5. That was an interlineation by the Court, I think, to make some logical sense out of its order. We sent him the money. Are you saying that the district court on its own motion called an arbitration 5? Yes, Your Honor. And in fact, our demand, looking at the record, will show ñ How did AAA treat it? How did the AAA treat it? Your Honor, they haven't done anything. They're just sitting there with it and the money. They haven't rejected it. They haven't done anything.  Thank you, Your Honor. Let me start with a couple of things that the question's been asking about. Arbitration 5, in fact, was an entirely new arbitration. It had an entirely new claimant by the name of North American Timeshare. And actually, I'd better stop there for a second and let me back up to that. I don't understand why we're even talking about North American Timeshare here. This case was filed by United Computer Systems. Arbitrations 2 and 3 were filed by United Computer Systems. All litigation over arbitrations 2 and 3 involved United Computer Systems. This case was filed by United Computer Systems. Arbitration 4 and arbitration 5 ñ or, excuse me, arbitration 4 was United Computer Systems. The last appeal was also litigated by United Computer Systems. In the last appeal, this Court noted many things. One, that arbitration 4 was merely a photocopy of arbitration 3 that UCS had already lost. This Court also noted that any arbitration would have to be in accordance with the terms of the party's arbitration. Your microphone is picking up your ñ I'm sorry, Your Honor. I'm sorry. I apologize. That is pursuant to the rules of the AAA, and the rules of the AAA require any such arbitration to be before the AAA. They also require the parties to file filing fees when they commence an arbitration. This Court also noted that UCS's legal options were rapidly dwindling. So on Renand, when the District Court was to be permitted to consider a motion to compel arbitration if UCS first met a condition, this Court placed a condition on UCS's ability to invoke the jurisdiction of the District Court to seek an order compelling arbitration because of UCS's past misconduct. UCS had involved the Court and these defendants in an endless cycle of abusive litigation, insisting on arbitration but refusing to commence the arbitration, and then suing the defendants at the same time, not only in this case but in two simultaneous State court actions, both of which were litigated through to the entry of money judgments in favor of the defendants. So in light of those circumstances, UCS was required to meet that condition before the District Court could consider a motion to compel arbitration. There were very good reasons from UCS's perspective to then abandon Arbitration 4 because this Court had noted the claims in Arbitration 4 were almost certainly doomed. They were simply a photocopy of claims that had already been arbitrated and lost. UCS at the same time did not want to arbitrate before the AAA because it had sued the AAA repeatedly, sued the AAA's arbitrators, sued the arbitrators' wives, sued the arbitrators' law firms, and sued the AAA's employees. So UCS did not want to be back before the AAA. What did UCS do in Mr. Stanwyck? They abandoned Arbitration 4. They filed the new Arbitration 5 with a new claimant and entirely different claims, and they included in Arbitration 5 claims against the AAA. Why? In order to manufacture a purported conflict, to circumvent this Court's ruling that any arbitration would have to be before the AAA. And at the same time, Mr. Stanwyck represented to the AAA that this Court had issued an order staying the arbitration. That was an utterly false representation. There was no such order. It was simply another example of UCS and Mr. Stanwyck and North American Timeshare now getting involved, delaying the proceedings and harassing the defendants. It was precisely that sort of conduct that has led to six courts entering orders, finding both of them to be vexatious litigants. The district court's order that's before this Court was not the first, and there are five others. Five other courts have reached the same conclusion, that UCS and Mr. Stanwyck are vexatious litigants. Based on an ample record that is before this Court, there are more than 17 lawsuits in the record that were filed by UCS and Mr. Stanwyck that they lost, 12 of those in a two-year period alone. Several of those cases seek to do nothing more than force the defendants over and over again, in State and in Federal Court, to continuously relitigate these same arbitration issues. As I understood your opponent this morning, he alleged that the district court changed what he had filed and called it Arbitration 5 with some sort of interlineation. No. That is not correct. That's what I understood the allegation to be. Did you understand that to be the allegation made from consultation? Yes, Your Honor. But that is not what the district court did. All right. Tell me what the district court did. The district court listened to the arguments raised by defendants that explained why Arbitration 5 was, in fact, a new arbitration and was different from Arbitration 4, and made a factual finding that, in fact, Arbitration 5 was Arbitration 5, it was a new arbitration, and that, therefore, paying fees for the new arbitration did not satisfy the condition imposed by this Court in the 2002 mandate that UCS pay the arbitration fees for Arbitration 4. It is also not true, as counsel stated, that Arbitration 5 states it's an amended claim. There is no such reference on Arbitration 5. To the contrary, the cover letter to the AAA that accompanied Arbitration 5 states to the AAA, so this is the representation by Mr. Stanwyck, that it is being submitted pursuant to AAA Rule 4. Rule 4, which is in the record, states that it governs the submission or the initiation of new arbitrations. If, in fact, this had been intended to be an amended arbitration claim, it would have been submitted under Rule 6, a different rule controls amendment of claims. He also, in the cover letter, had a reference to the matter that was being submitted with Arbitration 5. He calls it North American Timeshare versus AT&T. What was Arbitration 4? It was United Computer Systems, Inc. versus AT&T, an entirely different claimant. The check that he submitted with Arbitration 5 on its memo line says NAT versus ATT. It does not say UCS. This is an entirely new arbitration, a different claimant and entirely different claims. He represented to the AAA that it was a new arbitration. And, in fact, that's how the AAA treated it because we have in the record a letter from the AAA referring to the submission of a demand for arbitration, not an amended arbitration claim, but a demand for arbitration and a fee for this matter, a new matter, which in the AAA's letter is referenced as North American Timeshare versus AT&T, not as United Computer Systems versus AT&T. Arbitration 4 had been submitted and then what, a letter comes back saying we can't do it unless a fee is paid or something like that? That's correct. The UCS refused to pay the fee, so an employee at the AAA, Jan Strateke, sent a letter saying we can't administer this arbitration until you pay the fee, and Mr. Stanwyck responded by suing that employee for $100,000. Would the amount of the fee be the same for either 4 or 5? At this point, I'm not sure. At the time, Arbitration 4 was filed because there was no amount stated in the claim, although we know he's seeking $16.6 billion. Since he didn't put that number in the claim at the time, I think the default fee was $2,000. I think the default fee has changed since then, which is why he paid more than that when he submitted the new Arbitration 5, which similarly does not contain a number. In fact, Arbitration 5 only seeks declaratory relief. Counsel, opposing counsel says that AAA has not done anything to process what we are calling Arbitration 5. Do you agree with that? Yes and no. What happened was after Mr. Stanwyck submitted Arbitration 5 with a reference that said that this court had saved the arbitration, the AAA sent a letter to the parties, which is in the record, I believe it's page 1871, saying, because you've told us this arbitration has stayed, we're not doing anything with it, but we're not sure exactly what we're supposed to be doing with it, but explain it to us. And in the letter they say they've tried to contact Mr. Stanwyck, but they haven't been able to. To go beyond that in the story, I'd have to go beyond the record. I then sent a letter to the AAA telling them that the district court had in fact denied the motion to compel arbitration and therefore there should be no arbitration. And that was the last I ever heard of it. So to my knowledge since then, the AAA has done nothing with respect to Arbitration 5, although I'll note that during the pendency disappeal a few months earlier this year, despite the district court's order denying the motion to compel arbitration, Mr. Stanwyck notified us, the defendants, that he was going to proceed nevertheless with the arbitration, and when I pointed out that we were not obligated to arbitrate under the district court's order, he responded that we had therefore waived our right to notice or even to defend ourselves in any arbitration. So I'm not sure whether there's an arbitration out there that I don't know about or not. There shouldn't be, but I'm not certain at this point. All right. Thank you, counsel. Your Honor, quickly, going backwards, it's not just disingenuous. It's just not true. The, let's call them the appellants, filed a demand for arbitration using the AAA form. They don't have an amended form, and the form, when the court looks at it, will have an asterisk, and it says, NAT, and there's a little star, Successor and Interest to United Computer Systems, Common, Inc. It shows it directly on the form that's in the record. Who is what? I'd like to follow with this court a transcript of the hearing, 1994, after the 1993 decision, spreading the mandate of that decision, the standing decision, where AT&T acknowledged that NAT was the real, North American Timeshare was the real party in interest. And by the way, here, Your Honor, Times to do with sharing computer time. Counsel, what about opposing counsel's reference to the rule that you used in filing what we are calling arbitration 5, where you referenced the rule for new proceedings as opposed to the rule for amended proceedings? Your Honor, two things. One, it goes right to the heart of this, the proper forum for deciding these issues, and that under every case, the cases cited in Premier, Kiyosura, Chiron, Green Tree v. Basel, the Supreme Court case last year, is for the arbitrators. If we had made a mistake, that's why, as ‑‑ I understand your position, but would you just respond to his representation, that the form you used was the form that was used for new arbitrations and not for amended arbitrations? I'm not going to dispute that, Your Honor. I remember it's a form. I didn't find any other AAA form, and I can assure the Court I'm never going to use a AAA form again. The idea that appellants were sanctioned that were in the record, that we had to pay the filing fee, there seemed to be some aggravation that we hadn't. There's a clear reason we didn't. When we filed, what was arbitration for? It wasn't because of the fee. It was because the AAA was going to take it upon itself to decide the raised judicata issues submitted by AT&T, and they warned us in that letter demanding the fee, that if we paid the fee and they decided the raised judicata issues, which weren't in their purview against us, we'd forfeit the fee. I wasn't so worried about the amount of the fee, Your Honor, but waiver. But you just said that the AAA was the body that was supposed to make the rulings pertinent to the case. Oh, no, I didn't say that, Your Honor. The AAA doesn't. The administration ‑‑ no, no. A panel of arbitrators is not the AAA. Give me a few moments, Your Honor. Well, your time has expired, so we'll give you 30 seconds to wrap up. The AAA does not make decisions. It administers, provides rules, gives names of potential arbitrators. No arbitration in this case has ever been ‑‑ when you say before the AAA, that's a misnomer. Our agreement, when you look on it, it's under the rules of the AAA, as was the premier diabetic arbitration. But I need to state that all we are seeking, Your Honor, is the forum that the party agreed to. There's all this other stuff. It's painful, but the real issue is, does the smokescreen take away the agreement of the parties to arbitrate? There have been six decisions in the Ninth Circuit between the parties, going from the status of N.A.T. in 1993 as the real party in interest, as the successor to UCS, completely ignored by the 2002 panel and Judge Liu. There were the 1996 unpublished and unpublished decisions. We understand your argument. We don't refer to unpublished decisions. No, as a law of the case, Your Honor. All right. No, no, just between ‑‑ Okay. We understand your argument, and we will take this matter under submission. Unless one of the members of the panel wants additional filings, I'm going to deny your request to file matters in court here today. The case just argued is submitted for decision by the court, and this panel stands in recess for today. All rise.
judges: Canby, Hansen, Rawlinson